UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Cheryl D. Bailey f/k/a
Cheryl D. Dowling
   PLAINTIFF

v.

Robert E. Greenglass
   DEFENDANT

CIVIL ACTION NO.

**05 11500 DPW**

RECEIPT # 65618
AMOUNT $ 250.00
SUMMONS ISSUED 1
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. M.P.
DATE 7/15/05

MAGISTRATE JUDGE RBC

**COMPLAINT**

### A. JURISDICTION

1. The Plaintiff is a resident of Lincoln, Grafton County, New Hampshire.

2. The Defendant is a member of the Massachusetts Bar and a practicing attorney, with offices located at One Park Place, Plymouth, Plymouth County, Massachusetts.

3. Jurisdiction lies under 28 U.S.C. 1332 for diversity of citizenship. Damages are in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

### B. FACTS

4. On or about December 28, 2000, Plaintiff engaged the Defendant in representing her in divorce proceedings against her then husband, Richard E. Dowling, Jr. (hereinafter called Richard) which were held at the Plymouth Division of the Massachusetts Probate and Family Court. The Defendant's representation commenced on December 28, 2000 and ended on July 19, 2002.

5. The Defendant was negligent in performing services on behalf of the Plaintiff in that he repeatedly failed to pursue and complete vital discovery of evidence which the Plaintiff's former husband refused to provide.

6. Richard purposely and willfully distorted his financial condition by deceptive omissions and refusals to give complete and timely information in his various financial statements, beginning with the one used by Judge Doherty on February 7, 2001 in approving a Stipulation for Temporary Support and Alimony, which

was negotiated on the egregious disparity between Mr. Dowling's reported gross of $2,884.61 per week (from AKARA Corporation) and his actual gross income for calendar year 2000 of $427,137.00. That information was derived from all known sources of income in the Plaintiff's discovery conducted after the Defendant's termination. In addition, Richard concealed a 401(K) account that he initiated with AKARA during the time of the divorce action.

7. The Defendant was careless and derelict in not seeking the Court's enforcement powers to compel disclosure of Richard's true earnings and his earning capacity prior to trial even though it was obvious to the Defendant following his efforts at discovery in April 2002 that Richard purposely refused to provide his complete income records.

8. The Defendant was further negligent in his representation of the Plaintiff in refusing to initiate a freeze on Richard's 401(K) account in the Fidelity Fund. Due to the Defendant's negligence in not initiating a freeze of the account, the value of the fund declined from $188,000.00 in January 2001 to $31,000.00 in July 2002, when Richard converted it to cash. The Defendant's failure to seek a protective freeze and a subsequent court order or to negotiate with opposing counsel meant that a primary Section 34 divisible asset was allowed to dissipate.

9. The Defendant further did not make any attempt to determine the value of shares of stock of Computer Corporation Of America (CCA) that the Plaintiff informed him that Richard owned and excluded from his Financial Statement dated February 7, 2001. At a four-way conference at the Brockton Probate Court on August 7, 2001, the Plaintiff informed the Defendant of this omission after reviewing his deceitful Financial Statement. The Defendant made no subsequent effort to determine the fair value of the stock by discovery or through pursuing negotiation with opposing counsel. These inadequate and substandard omissions caused Plaintiff to accept reduced support and alimony.

10. The Defendant was negligent in not pursing the process of discovery in a timely fashion during his representation of the Plaintiff. The Defendant waited until April 2002 to hold a deposition of Richard when he still lacked the necessary documentation to examine him. A hearing was held on May 13, 2002 before Judge Doherty for Richard's abusive conduct, preempting the date scheduled for the pre-trial hearing on discovery and other matters. The hearing was preempted by Judge Doherty, which she used to discuss general principles of the interaction of parents as it affected the well-being of their minor children. As far as it is reflected in the record, there was never a pre-trial hearing. These mismanagements of the Plaintiff's case caused money damages, as they rendered unavailable her proof of injury at trial and pretrial efforts to obtain arrears in support payments in excess of Twenty Seven Thousand Dollars ($27,000.00).

11. The Defendant was further negligent in not communicating with Dr. Vicky Lyle, the Guardian Ad Litem appointed in the matter. The Defendant did not furnish to Dr. Lyle evidence of numerous telephone calls and messages made by Richard to the Plaintiff, which would have proved harassment on Richard's part. In addition, Defendant allowed Richard to make an unchallenged assertion as stated on page 14 of the Guardian Ad Litem's Report, in which he was reported to have said "I kept PO Box in Duxbury-always knew I'd end up back there, knew I'd end up with the children; it was the one thing that has been constant-rather than changing the mail with each move."

12. As a direct and proximate result of the negligent misrepresentation of the Plaintiff's interest by the Defendant, Plaintiff was forced to pursue her own discovery in the summer and fall of 2002 at considerable time and expense. In addition, the Defendant's negligence in communicating with Dr. Lyle, especially with respect to the issues of parental fitness, temperament and attitude toward the children individually and toward the parties as parents, had an adverse impact as manifested in Dr. Lyle's favoring of Richard's unchallenged assertions.

13. The Defendant's refusal to challenge Richard's assertions and manipulations as narrated by the Guardian Ad Litem allowed the Court to exclude evidence favorable to Plaintiff's superior fitness to serve as physical custodian of her four minor children.

14. On or about June 10, 2002, the Defendant purported to negotiate a settlement agreement without consultation with her and presented a form of agreement which would have penalized her in matters of support, alimony and custody. When the Plaintiff refused to accede to Defendant's coercive directions to do so, he abandoned any requisite efforts to establish her rights and claims as her attorney.

## COUNT I

15. Plaintiff incorporates the allegations previously pleaded in Paragraphs 1 through 14 and claims damages for breach of contract for professional services in the amount of One Million Dollars ($1,000,000.00), plus interest and costs.

## COUNT II

16. The Plaintiff incorporates the allegations pleaded in Paragraphs 1 through 15 and requests that the Court impose multiple damages and attorney's fees and costs under the provisions of Mass. G.L. c.93A for unfair and deceptive acts and practices. Annexed hereto and incorporated herein as Exhibit 1 is a copy of a letter mailed to and presumably received by the Defendant dated November 2, 2004 by Plaintiff's attorney Edgar L. Kelley (Co-Counsel herein) to satisfy the requirements of Mass. G.L. c.93A, sec. 9(3) and sec. 11 and sec. 2(a).

## VERIFICATION OF COMPLAINT

The undersigned Cheryl D. Bailey, Plaintiff in this case, states that she has read and approve and verify the truth and accuracy of this Complaint, this 14th day of July 2005

*PLAINTIFF CLAIMS A JURY TRIAL* ℰℬ &ℰK

_____
CHERYL D. BAILEY

CHERYL D. BAILEY
by her Attorneys,

_____
PHILIP D. MORAN, ESQ.
265 Essex Street
Suite 202
Salem, MA 01970
(978) 745-6085
B.B.O.#: 352920

_____
EDGAR L. KELLEY, ESQ.
c/o PHILIP D. MORAN, ESQ.
265 Essex Street
Suite 202
Salem, MA 01970
(978) 745-6085
B.B.O.#: 265300

**KELLEY LAW OFFICE**
Attorney Edgar L. Kelley
P. O. Box 887
Ipswich, MA 01938
Telephone (978) 887-5123
Fax (978) 356-3414

November 2, 2004

Attorney Robert Greenglass
One Park Place
Plymouth, MA  02360

RE:  Cheryl Dowling
     Dowling v. Dowling
     Docket No. 99D1434-DV1

Dear Mr. Greenglass:

    This letter is written to inform you that Cheryl Dowling has directed me to state her claim against you for your negligent professional conduct during your representation of her interests in the above-captioned divorce action.  Your representation commenced on or about December 28, 2000 and ended on July 19, 2002.

    Cheryl Dowling's claim is based upon your services and particularly your repeated failures to pursue and complete vital discovery of evidence which her former husband, Richard E. Dowling, Jr., refused to provide.  He willfully distorted his financial condition by deceptive omissions and refusals to give complete and timely information in his various financial statements, beginning with the one used by Judge Doherty on February 7, 2001 in approving a Stipulation for Temporary Support and Alimony which was negotiated on the egregious disparity between Mr. Dowling's reported gross of $2,884.61 per week (from AKARA Corporation) and his actual gross income for calendar 2000 of $427,137 derived from all known sources of income in discovery conducted after your termination on July 19, 2002.

    The percentage of income reported by the defendant is 149,000/427,000, i.e., 35% of his gross.  Following your efforts at discovery in April 2002 when it was obvious that Richard had then and continued to refuse to surrender his complete income records, you did not seek the Court's enforcement powers to compel disclosure of Richard's true earnings and his earning

(EXHIBIT 1)

capacity prior to trial. Specifically, his financial statement dated 2/7/01 did not include commissions totaling $80,000 that was later disclosed by AKARA's records, which you could have had produced in discovery to increase support and fair alimony.

A distinct failure to preserve and protect Cheryl's rights to a timely protective order was your refusal to initiate a freeze on Richard's 401(k) account in The Fidelity Fund. By this omission the value of the fund declined from about $188,000 in January 2001 when you were retained to $31,000 in July 2002 when Richard converted it to cash. In August 2000 the value was $288,000 but that value declined to about $165,000 in December 2000 when you were retained. At the end of February 2001 it had declined by $80,000 to the value of $108,000. In the face of this volatility, a protective freeze and a subsequent court order to liquidate the fund should have been timely sought or negotiated with opposing counsel. Inaction was an invitation to dissipation of a primary Section 34 divisible asset.

On August 7, 2001 you and Cheryl participated in a four-way conference at the Probate Court in Brockton. A discussion of the parties' assets was concentrated on the fair division of assets. Mr. Dowling's financial statement, dated February 7, 2001, was examined and reviewed. She exclaimed that said financial statement (dated February 7, 2001, the date of the Stipulated Temporary Alimony and Support Orders) did not include the shares of stock in Computer Corporation of America (CCA) which had an undetermined value. No effort was made to determine the fair value by discovery or through Attorney Dawley.

Next in the sequence of professional delinquencies is the matter of Richard Dowling's non-disclosures and concealments of the true values of his AKARA benefits. There was no disclosure of his monthly auto expense payment of Four Hundred Dollars ($400.00) from June or July 2000 to August 7, 2001. Also, there was a concealment of Richard's having initiated a 401(k) account with AKARA during the time of Cheryl's divorce action. The damage resulting from the non-pursuit of complete discovery was the loss of evidentiary effect flowing from Richard's controlled artifice at the later trial.

In respect of the Quantum Bridge earnings and benefits, Mr. Dowling did not list his 401(k) account on the April 12, 2002 Financial Statement. He reported a value of about $6,800 on the Quantum Bridge Withdrawal Statement dated July 25, 2002. The 401(k) was initiated on January 3, 2002. The amounts of his concealments remain undetermined.

On September 11, 2001 you filed the request for a pre-trial conference. On that request form you represented that discovery

commenced. You waited until April 2002 to hold a deposition without then having the necessary documentation to examine the defendant. A hearing was held on May 13, 2002 before Judge Doherty for Mr. Dowling's abusive conduct, which was the date scheduled for the pre-trial hearing on discovery and other matters. The hearing was preempted by the Judge, which she used to discuss general principles of the interaction of parents as it affected the well-being of their minor children. As far as it is reflected in the record, there was never a pre-trial hearing.

The process of discovery was never completed in a timely fashion during your representation of Cheryl. Accordingly, she had to and did pursue her own discovery in the summer and autumn of 2002 at considerable time and expense. The absence of a formal pre-trial hearing to state agreed facts and financial information and the identity of her expert witness, John Pollano, attorney and CPA, permitted the Court to refuse the proffered testimony of Attorney Pollano. This omission prevented Cheryl from proving the critical effect of Mr. Dowling's willful concealments and misstatements of his true financial condition upon her right to fair alimony and support. Enclosed herewith are copies of your letters to Cheryl Dowling dated February 9, 2001 and February 13, 2001, which establish the need for such investigation and exposure as part of your professional responsibility to her.

The lack of any communication with Dr. Vicki Lyle, the guardian ad litem, with particular respect to the issues of parental fitness, temperament and attitude toward the children individually and toward each other as parents, had an adverse impact as manifested in Dr. Lyle's favoring of Mr. Dowling's unchallenged assertions. There has been obvious damage to your former client in her emotional interaction with her children and her continuing fear of the conduct of Mr. Dowling as a matter of safety and his manipulation of the children's emotions. You did not furnish to the guardian ad litem the great number of telephone calls and messages made by Richard to Cheryl, covering 15 months while you were her attorney, which would have proved enormous harassment by Mr. Dowling. In addition, your abdication of responsibility allowed Mr. Dowling to make an unchallenged assertion as stated on page 14 of the guardian ad litem's report, in which he was reported to have said "I kept PO box in Duxbury - always knew I'd end up back there, knew I'd end up with the children; it was the one thing that has been constant - rather than changing the mail with each move."

When Cheryl refused to execute a one-sided agreement favoring Mr. Dowling on June 10, 2002 furnished by you to her, it seems that you abandoned any effort or interest in her achieving a favorable result.

Please inform your professional liability carrier of this claim. I shall anticipate an early response.

                                        Very truly yours,

                                        EDGAR L. KELLEY

ELK:amb

Enclosures

ELK:amb

ROBERT E. GREENGLASS
ATTORNEY AT LAW

February 13, 2001

Ms. Cheryl D. Dowling
Post Office Box 1387
Duxbury, Massachusetts 02331

RE:    Cheryl D. Dowling
        v.    Richard E. Dowling, Jr.

Dear Cheryl:

Enclosed please find a copy of correspondence dated February 9, 2001, that I received from Attorney Dawley. Please carefully review the correspondence and the employment agreement. As you can see, Mr. Dowling, in addition to his salary, is entitled to other benefits. I will inquire as to the expected date that the other benefits will be paid and I will notify you thereafter.

If you have any questions, please call me at once.

Very truly yours,

Robert E. Greenglass
REG/mm

enclosures:    copy of correspondence from Attorney Dawley dated 2-9-01
                   copy of Richard E. Dowling's employment agreement

ROBERT E. GREENGLASS
ATTORNEY AT LAW

February 9, 2001

Ms. Cheryl D. Dowling
Post Office Box 1387
Duxbury, Massachusetts 02331

RE:   Cheryl D. Dowling
  v.   Richard E. Dowling, Jr.

Dear Cheryl:

After leaving Court on February 7, 2001, I was trying to determine how it would be best to proceed in your case. Since it now appears that most of the issues will be financial in nature, it is important that we are able to disclose the full income of your husband and his employment benefits.

To help me in fully understanding your husband's income, I would like you to contact the mortgage company that approved the mortgage for the property in Weston. Ask them to send you a copy of the complete mortgage application, along with income verification that they maintain in their file. The application will show your husband's current income and earnings and the income verification will establish what his company is paying.

Enclosed you will find a copy of your husband's financial statement that was hand-delivered to me when we appeared in Court on February 7, 2001. I am forwarding this information to you so that you will be fully apprised of all facts in this case.

If you have any questions, please feel free to contact me at any time.

Very truly yours,

Robert E. Greenglass
REG/mm

enclosure:   copy of Richard E. Dowling's financial statement dated 2-7-01

One Park Place
Plymouth, MA 02360
508-747-0700
FAX 508-747-7642

> *Family time - that will be with Cheryl; there won't be a time for me – that will be diminished – by her choice, not my choice, not the kids' choice. It won't be like we've been doing where the children see both their parents a lot..*

[stalking?] "his family joining the health club to find out what hours I was there; him driving by my place of employment when I get out of work, riding his bicycles past my employment and my house; phone calls leaving songs playing on my message machine from his phone number; he used to come around on my property and look in my windows. He stole my pocketbook one time – I had him watch the kids while I took one of the kids to the dr, and he went through all my drawers, kids told me; he confronted my son – came for the cats- my daughter would only come if the cats could come - times the kids didn't want to go, would lock themselves in the bathroom – he's told them to act up in my presence;

> *[father: my aunt and uncle have been members of the health club for years; she's accused my bro-in-law of stalking her as well; I do triathlon and I ride my bike a lot; going through her things – never did that; the pocketbook – never – she left it in my car and I returned it the next day – and she accused me a second time, then found it in her house – I mentioned that. No reason to leave a song on her voice recording. [no to everything?] right, she just wants out of everything.*

[not directly to you?] right; just felt like he was always watching, he kept a P.O. box in Duxbury, several times passed my house a day; he didn't start dating anything til this past January; he bought a house in Marshfield;

> *[father: I kept PO box in Duxbury- always knew I'd end up back there, knew I'd end up with the children; it was the one thing that has been constant – rather than changing the mail with each move;*
>
> *I'd actually dated – first person, in Weston dated 8 months; last thing I wanted to do was introduce the children; then another person for 6 months – living in Boston; haven't really been dating since down in Marshfield*

[how do you communicate with each other?] right now about the kids, I have a notebook going back and forth – Sol Levin recommended; that's about it;

> *[father: it hasn't gone back and forth; only thing, is leaving voice mails; it's really poor*

"there was an incident – Easter Sunday – I went to the police – he picked them up in the morning – I was going to my father's for Easter dinner – I left my house 10" after they left – he had pulled over on Route 3 in the breakdown lane right before Exit 11 – I was in the fast lane, noticed his car

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
CHERYL D. BAILEY f/k/a CHERYL D DOWLING

(b) County of Residence of First Listed Plaintiff: GRAFTON, N.H.
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
EDGAR L KELLEY and PHILIP D. MORAN
265 ESSEX ST. SALEM, MA 01970

## DEFENDANTS
ROBERT E GREENGLASS

County of Residence of First Listed Defendant: PLYMOUTH
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known): UNKNOWN

05-11500 DPW

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State NH | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS - PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**TORTS - PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332 Diversity

Brief description of cause:
LEGAL MALPRACTICE and MASS GL c.93A - UNFAIR & DECEPTIVE ACTS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE _____
SIGNATURE OF ATTORNEY OF RECORD
Edgar L. Kelley

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __CHERYL D. BAILEY v. ROBERT E GREENGLASS__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    - ___ I.   160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
    - ___ II.  195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
              740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases
    - _140_ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
              315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
              380, 385, 450, 891.
    - ___ IV.  220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
              690, 810, 861-865, 870, 871, 875, 900.
    - ___ V.   150, 152, 153.

    **05 11500 DPW**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    __N/A__

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐   NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

    YES ☐   NO ☒

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐   NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐   NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ☐   NO ☒

    A. If yes, in which division do all of the non-governmental parties reside?

    Eastern Division ☐   Central Division ☐   Western Division ☐

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division ☒   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐   NO ☒

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __PHILIP D. MORAN and EDGAR L. KELLEY__
ADDRESS __LAW OFFICE OF PHILIP D. MORAN 265 ESSEX ST, SALEM, MASS 01970__
TELEPHONE NO. __(978) 745-6085   FAX (978) 741 2572__

(CategoryForm.wpd -5/2/05)